**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICKEY MONTGOMERY,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO; OFFICER ARNULFO LUNA #18047, OFFICER JUAN VARGAS #18171, OFFICER JOSHUA TAYLOR #17973 and UNKNOWN OFFICERS, individually and in their official capacities as Chicago Police Officers,<br><br>Defendant(s). | Case No. 25-cv-14894<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Rickey Montgomery ("Plaintiff") brings this complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") seeking damages and injunctive relief for the alleged violation of his Fourth Amendment rights, as applied to the States under the Fourteenth Amendment, and Illinois law. Before the Court is Defendants Arnulfo Luna, Juan Vargas, and Joshua Taylor (the "Officer Defendants") and the City of Chicago's (collectively "Defendants") motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated herein, Defendants' Motion to Dismiss [27] is granted in part and denied in part.

## I. Background

The following factual allegations taken from the Complaint [1] are accepted as true for the purpose of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

On February 6, 2025, Plaintiff was walking to a barbershop before work when he was approached by the Officer Defendants, who were patrolling the area in response to a 911 call reporting a person with a gun. [1] at ¶¶ 13–14. The Defendant Officers possessed the suspect's name and a "vague" description of his appearance. *Id.* ¶¶ 15–16. Although Plaintiff did not resemble the suspect, the Defendant Officers exited their vehicle and asked Plaintiff if he was the person they were looking for. *Id.* ¶¶ 15–16. Plaintiff said he was not and continued walking toward the barber shop. *Id.* ¶ 16.

The Officer Defendants then made a U-turn, exited their vehicle again, and pursued Plaintiff on foot into the barber shop. *Id.* ¶ 17. Inside, the officers asked Plaintiff if he had a Concealed Carry License ("CCL"), a term Plaintiff was unfamiliar with. *Id.* ¶ 18. Plaintiff sought clarification, asking "what is that" and "for what," and stated that he "did not need" a CCL. *Id.* One of the Officer Defendants indicated that they believed Plaintiff possessed a gun in his right pocket, evidenced by an L-shaped bulge. *Id.* ¶¶ 19, 21. Plaintiff stated, "there is no gun," and indicated that a gun would not be visible through his thick winter coat. *Id.* ¶ 21; *see id.* ¶ 13.

One of the Officer Defendants then initiated a pat down, to which Plaintiff objected, stating that he did not consent. *Id.* ¶ 20 ("[Y]ou can't search me. You have

no reason to search me."). The Officer Defendants recovered a loaded firearm in Plaintiff's pocket and arrested him. *Id.* ¶ 22. The Officer Defendants then transported Plaintiff to a Chicago Police Department ("CPD") facility, where he was charged with unlawful use of a weapon under 720 ILCS 5/24-1.6(A)(2). *Id.* ¶ 23. Plaintiff was denied release and held in pretrial custody for approximately six and a half months, when the prosecutor dismissed all charges ahead of a hearing on Plaintiff's motion to suppress evidence. *Id.* ¶¶ 23, 25. Plaintiff alleges his case was dismissed as an "implicit[] conce[ssion]" that there was no probable cause supporting the search and arrest. *Id.* 25.

As a result of his arrest and confinement, Montgomery was fired from his job, causing significant economic loss and financial hardship. *Id.* ¶ 24. He also suffered severe emotional distress. *Id.* ¶ 24.

Montgomery alleges that the Defendant Officers' conduct was pursuant to an official policy, custom, or practice of CPD, including the failure to adequately train officers, a pattern of conducting warrantless searches based on fabricated observations, and a pattern of deliberate indifference to the constitutional rights of individuals in high-crime areas. *Id.* ¶ 26.

The Complaint contains the following federal constitutional counts against the individual officers and CPD: Count I (unlawful investigatory stop and detention), Count II (unlawful search), Count III (false arrest), and Count IV (malicious prosecution) are brought pursuant to Section 1983. The following claims based in state law are alleged against all Defendants: Count V (unlawful search and seizure)

is brought pursuant to Article I, Section 6 of the Illinois Constitution; Count VI (false arrest) and Count VII (malicious prosecution) are brought pursuant to Illinois common law. Finally, Count VIII[1] (indemnification) is brought pursuant to 745 ILCS 10/9-102 against the City of Chicago only. Plaintiff also brings *Monell* policy and practice claims. Plaintiff seeks compensatory and punitive damages, a declaration that Defendants' conduct violated Plaintiff's constitutional rights, fees and costs, and an injunction prohibiting CPD from continuing the policies and practices described in the Complaint. Before the Court is Defendants' motion to dismiss the Complaint for failure to state a claim. [27].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's

---

[1] The Complaint labels both of Plaintiff's state law malicious prosecution and indemnification claims as Count VII. For the purposes of clarity, the Court will refer to Plaintiff's indemnification claim as Count VIII.

favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). However, the court "need not accept as true statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The motion "should be granted only if it appears beyond doubt" that the plaintiff can prove no facts entitling him to relief. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 432 (7th Cir. 1993). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Claimants under Section 1983 are not held to a heightened standard of pleading. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168–69 (1993).

## III. Analysis

Plaintiff alleges the Officer Defendants stopped and detained him without reasonable suspicion (Counts I and V), searched him without a warrant and without

reasonable suspicion or probable cause (Counts II and V), arrested him without probable cause (Counts III and VI), and conducted a malicious prosecution (Counts IV and VII). [1].[2] Plaintiff also includes *Monell* claims against CPD,[3] and seeks indemnification against the City of Chicago under Illinois law (Count VIII).

Defendants argue Plaintiff has failed to state a claim for violations of the Fourth Amendment and state law, and his complaint must be dismissed. The Court addresses each argument in turn.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (quoting *Riley v. California*, 573 U.S. 373, 382 (2014)). Defendants argue Plaintiff has not stated a claim for relief under the Fourth Amendment because Defendants legally stopped, searched, and arrested Montgomery based on reasonable suspicion and probable cause. [27]. Montgomery avers that he was unlawfully

---

[2] In his opposition brief, Plaintiff argues that Defendants failed to address his Fourth Amendment claim for unlawful pretrial detention. [29] at 5. Plaintiff failed to plead unlawful pretrial detention. *See* [1]. A "[p]laintiff cannot amend his complaint by raising new claims in response to a motion to dismiss." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008). In any event this claim would be duplicative of Plaintiff's malicious prosecution claims (Counts IV and VII). *See Smith v. City of Chi.*, 2024 WL 3757127, at *2 (N.D. Ill. Aug. 12, 2024) (citing *Thompson v. Clark*, 596 U.S. 36, 43 (2022)).

[3] Defendants move to dismiss Counts I to IV on the grounds that CPD is a nonsuable entity. [27] at 3 n.2, 10. It is well-settled that the Chicago Police Department is not a suable entity. It is a department of the City of Chicago, which does not have a separate legal existence. *See Karney v. City of Naperville*, 2015 WL 6407759, at *1 (N.D. Ill. Oct. 22, 2015); *see also Gray v. City of Chi.*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001); *Bonilla v. City Council of City of Chi.*, 809 F. Supp. 590, 601 (N.D. Ill. 1992). The Court dismisses Montgomery's claims against the CPD with prejudice and substitutes the City of Chicago as the real party in interest to these counts. *See* Fed. R. Civ. P. 19(a)(2); *Karney*, 2015 WL 6407759, at *1.

stopped, detained, searched, arrested, and prosecuted without reasonable suspicion or probable cause. [29]. The Court must assess each of Montgomery's claims individually. *See United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996) ("[T]he decision to [seize] is properly analyzed as distinct from the decision to [search].").

### A. Investigatory Stop & Detention

Montgomery alleges that his initial interactions with the Officer Defendants on the street and within the barber shop amount to a seizure triggering protection under the Fourth Amendment and Article I, Section 6 of the Illinois Constitution[4] (Counts I and V). [1] at 4, 8. Defendants counter that the Officer Defendants' initial encounter with Plaintiff was consensual and not subject to Fourth Amendment protections. [27] at 3–4. The Court agrees with Defendants.

Not every interaction between police and citizens involves a "seizure" of the citizen. *See Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). A person is seized only when, "taking into account all of the circumstances surrounding the encounter, the police conduct 'would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (quoting *Florida v. Bostick*, 501 U.S. 428, 437 (1991)). Courts distinguish between "consensual questioning," in which a citizen is "at liberty to disregard a police officer's request for information," and an "investigative stop" or

[4] Illinois courts interpret Article I, Section 6 of the Illinois constitution "in lockstep with the search and seizure clause of the fourth amendment to the United States Constitution." *City of Chi. v. Alexander*, 89 N.E.3d 707, 719–20 (Ill. 2017). Therefore, the analysis and result for the federal and state search and seizure counts are the same.

"seizure" in which a citizen is not free to ignore the police officer and the citizen is seized within the meaning of the Fourth Amendment. *United States v. Black*, 675 F.2d 129, 134–35 (7th Cir. 1982). An investigatory stop must be "based on reasonable suspicion that the detained individual has committed or is about to commit a crime." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (internal quotations and citations omitted). "The officers initiating the investigatory stop must be able to point to 'specific and articulable facts which, taken together with rational inferences from those facts,' suggest criminal activity. *Id.* (quoting *Terry*, 392 U.S. at 21). "Inarticulate hunches will not suffice." *Id.* However, "[r]easonable suspicion is a lower threshold than probable cause and considerably less than preponderance of the evidence . . . . This is an objective standard, based upon the facts available to the officers at the moment of the seizure." *Id.* (internal quotations and citations omitted).

Plaintiff argues that Defendants' cases on this point are inapplicable because in those cases the officers calmly approached individuals on the street without displaying weapons, using an aggressive tone, or implying suspicion of a crime. [29] at 2. Plaintiff then spills much ink arguing that the Defendant Officers lacked a reasonable suspicion to question him on the street and follow him into the barber shop because he did not resemble the person they were looking for, and had already confirmed that he was not that person. *Id.* Plaintiff misses the point—the stop was consensual and did not require a reasonable suspicion in the first place.

The Complaint alleges that the Defendant Officers merely "pulled their vehicles in front of the barber shop, exited the vehicle," and asked Plaintiff if he was

the person they were looking for. [1] ¶¶ 16–17. The Officers then "made a U-turn in their vehicle and followed plaintiff" before pursuing him into a public building, where they asked him if he had a CCL. *Id.* ¶ 17. "The Fourth Amendment is not triggered when law enforcement officers merely approach an individual in a public place and ask a few questions." *United States v. Douglass*, 467 F.3d 621, 623–24 (7th Cir. 2006); *United States v. Pace*, 48 F.4th 741, 749 (7th Cir. 2022). Nor is it triggered by turning around and following them. *See United States v. Mays*, 819 F.3d 951, 953, 956 (7th Cir. 2016). Plaintiff does not allege the "usual hallmarks" of an investigatory stop, such as the officers' use of force, use of threats or commands, the brandishing of the officers' weapons, or that the officers blocked him from walking away. *Hall v. City of Chi.*, 989 F. Supp. 2d 699, 705 (N.D. Ill. 2013); *see also United States v. Drayton*, 536 U.S. 194, 203–04 (2002). Plaintiff raises additional details to this effect for the first time in his opposition brief (*e.g.*, that he was "surrounded" by police vehicles and the Defendant Officers used an "aggressive tone"), [29] at 2, but the Court must disregard these inconsistent details not raised in the Complaint. *Wilson v. Price*, 624 F.3d 389, 391 n.1 (7th Cir. 2010) ("[W]e only consider those allegations made within the four corners of the complaint."); *Hilco v. Diligence Servs., LLC v. Sikich, LLC*, 2025 WL 1455825, at *2 (N.D. Ill. May 21, 2025) (same). As pleaded, Plaintiff's initial interaction with the Defendant Officers—on the street and continuing in the barber shop—do not rise to a seizure afforded Fourth Amendment protection.

The Officers' questioning of Plaintiff was a consensual stop, and for this reason, Count I and the seizure alleged in Count V are dismissed without prejudice.

### B. Search

Counts II and V allege an unlawful search under the Fourth Amendment of the U.S. Constitution and Article 1, Section 6 of the Illinois Constitution. Again, the analysis and result for the federal and state counts is the same.

Plaintiff alleges that once inside the barber shop, one of the Officers indicated that he believed Plaintiff had a gun in his right pocket, and "reached around Plaintiff's waist in an attempt to pat him down," to which Plaintiff objected, stating "you can't search me, you have no reason to search me." [1] ¶ 20. Although the Officer Defendants' initial questioning of Plaintiff was a consensual stop, the interaction "los[t] its consensual nature" and escalated into an investigative stop when the officers initiated a patdown of Montgomery over his objections. *Bostick*, 501 U.S. at 434. Defendants concede as much, and argue that the Officer Defendants had a reasonable suspicion that Montgomery was armed and dangerous based on his supposed resemblance to an individual suspected of a crime, his presence in "a specific area," observing the shape of a gun in Montgomery's pocket, and Montgomery's statement that he did not know what a CCL was. [27] at 5–6. Plaintiff, on the other hand, argues that the Defendant Officers lacked a reasonable suspicion to conduct the warrantless search, pointing to the allegations that he did not resemble the dangerous individual the officers were searching for, and that it would have been

impossible for the officers to observe a gun under his "thick winter coat."[5] [29] at 3; [1] ¶¶ 13–15.

Taken as true, Plaintiff's allegations are sufficient at this stage to state a claim. Plaintiff did not resemble the individual that the Defendant Officers were searching for, and the Defendant Officers were not able to observe a weapon under Plaintiff's thick winter coat. That a gun was recovered in the search is of no consequence for the purposes of Counts II and V. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963) (a search unlawful at its inception may not be validated by what it turns up). The Defendants' only remaining fact to support reasonable suspicion, that Plaintiff was proximate to a reported crime, is insufficient on its own. An individual's presence in a high-crime area does not on its own support a finding of reasonable suspicion. *Huff v. Reichert*, 744 F.3d 999, 1007–08 (7th Cir. 2014). Defendants' arguments to the contrary and Plaintiffs' credibility can be assessed through discovery.

Counts II and the unlawful search alleged in Count V state a claim for relief.

### C. False Arrest

Counts III and VI accuse the Officer Defendants of false arrest under the Fourth Amendment and Illinois common law. These claims narrowly survive Defendants' motion.

---

[5] Plaintiff emphasizes in his opposition brief that the Defendant Officers were in possession of a mugshot of the individual they were looking for—not just a "vague description" as alleged—and had been patrolling the area "for some time without locating the suspect." [27] at 2. The Court disregards these facts raised for the first time in Plaintiff's opposition brief.

To effect a warrantless arrest, an officer needs probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). An officer has probable cause if "the facts and circumstances within [their] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964))). "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (citation omitted); *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. 1st Dist. 2006) (same re the common law claim for false arrest).

Defendants argue that Plaintiff's claims predicated on false arrest should be dismissed because Plaintiff failed to plausibly allege that he was arrested without probable cause. [27] at 6–7. Plaintiff argues that a probable cause finding is precluded by excluding from consideration the "fruit of the poisonous tree"—*i.e.*, the gun recovered as part of the Defendant Officers' allegedly unlawful search. [29] at 4. Defendants point out that the exclusionary rule does not apply in the civil context, an argument Plaintiff does not squarely address. [27] at 7; *see* [29] at 4.

As a threshold matter, Defendants are correct that the exclusionary rule does not apply in the civil context. "The fruit of the poisonous tree doctrine is not available to assist a [Section] 1983 claimant" because "the issue of whether probable cause existed to initially stop and search is distinct from the issue of whether probable cause existed to detain *after* a firearm was recovered." *Stubbs v. City of Chi.*, 616 F. Supp.

3d 793, 803 (N.D. Ill. 2022) (emphasis in original) (internal citation omitted); *Martin v. City of Chi.*, 2017 WL 56633, *4 (N.D. Ill. Jan 5, 2017) (collecting cases). Therefore, Plaintiff's Section 1983 false arrest claim is concerned with whether the Defendant Officers had probable cause to detain and prosecute Montgomery, irrespective of whether the initial stop and search were lawful.

Regardless, Plaintiff narrowly alleges facts that support the conclusion that the Defendant Officers lacked probable cause to arrest him for unlawful use of a weapon under 720 ILCS 5/24-1.6(a)(2)–(3). Plaintiff alleges facts that support the argument that the Defendant Officers did not *know* that he did not possess a CCL, a "touchstone of probable cause." *Karney v. City of Naperville*, 2016 WL 6082354, at *4 (N.D. Ill. Oct. 18, 2016) (declining to dismiss a false arrest claim because the defendant police officers did not establish that they knew plaintiff's license was invalid at the time he was arrested). As is clear on the face of the Complaint, Plaintiff did not say that he did not have a CCL, he simply expressed confusion about what a CCL was, and then said that he did not need one. [1] ¶ 18. Plaintiff does not allege, nor do Defendants argue, that Plaintiff told the Defendant Officers he did not have a CCL, nor that the Defendant Officers made any further attempts to ascertain this fact before making the arrest. "In particular, there is nothing within the four corners of the [Complaint] indicating that the Defendant Officers had [Montgomery's CCL status] available to them at the time of detaining him." *Stubbs*, 616 F. Supp. 3d at 806 (declining to dismiss unlawful detention claim). "Without that information, the facts spelled out in the Complaint do not establish probable cause; finding someone

walking in an area for which there was an anonymous tip of [someone possessing a gun] . . . does not add up to probable cause, even if a gun is recovered." *Id.* "Mere gun possession standing alone cannot establish probable cause" because "neither Illinois nor Chicago criminalizes all gun possession in public." *United States v. Williams*, 2021 WL 25550, at *8 (N.D. Ill. Jan. 1, 2021); *see United States v. Watson*, 900 F.3d 892, 896 (7th Cir. 2018) (no probable cause where 911 caller reported boys playing with guns in a parking lot).

Furthermore, even if Plaintiff did not have a valid CCL, that fact would be irrelevant to the probable cause issue if the officers believed otherwise at the time. *Williams v. Rodriguez*, 509 F.3d 392, 398–99 (7th Cir. 2007). The extent the Defendant Officers did or did not know whether Montgomery had a valid CCL is a disputed fact that the Court cannot resolve on a motion to dismiss. *Karney*, 2018 WL 6082354, at *5.

For the above reasons, Plaintiff has stated a claim for false arrest under Counts III and VI.

**D. Malicious Prosecution**

Counts IV and VII allege malicious prosecution against the Officer Defendants and City of Chicago for prosecuting him without probable cause. Defendants argue that Plaintiff has failed to state a malicious prosecution claim as to the Defendant Officers because the Complaint contains no allegations that they participated in Plaintiff's state court prosecution, and Plaintiff's malicious prosecution claims as to

the City of Chicago also fail because Plaintiff failed to plead the elements of the Illinois common law tort. [30] at 10. Defendants are correct in both respects.

Plaintiff does not allege that Officer Defendants were involved in his prosecution *in any way* after his arrest. *See* [1]. While "a person can be liable for commencing or continuing a malicious prosecution even if that person does not ultimately wield prosecutorial power or actively deceive prosecutors," *Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 872 (N.D. Ill. 2023) (quoting *Beaman v. Freesmeyer*, 131 N.E.3d 488, 499 (Ill. 2019)), malicious prosecution claims against police officers are an "anomaly" actionable only where the officers' role includes initiating and pursuing a criminal prosecution, as opposed to merely effectuating and maintaining a seizure. *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994); *Washington v. Summerville*, 127 F.3d 552, 559–60 (7th Cir. 1997). The officer must do more than report the crime or give testimony, they must play an active role in the prosecution. *Manganiello v. New York*, 612 F.3d 149, 163 (2d Cir. 2010); *Davis v. Temple*, 673 N.E.2d 737, 741 (Ill. App. 5th Dist. 1996) (allegations that police officer caused charges to be filed against plaintiff and submitting allegedly false affidavit are an insufficient basis to bring malicious prosecution claim). "Absent allegations that a police officer committed an improper act after [the arrest], the officer is not liable for malicious prosecution and, by extension, is not liable for a [S]ection 1983 claim based on malicious prosecution." *Sterling v. Kazmierczak*, 983 F. Supp. 1186, 1191 (N.D. Ill. 1997). Plaintiff does not allege that the Defendant Officers committed any improper act after the arrest and adds a statement in his response brief that the Officer

Defendants participated in his state court proceedings by submitting an arrest report. [29] at 5. Even if this fact were properly alleged, it is insufficient to support a claim to the Defendant Officers under Section 1983 and state common law. Counts IV and VIII are dismissed as to the Defendant Officers.

Counts IV and VII also fail as to the City of Chicago. To succeed in his malicious prosecution claim, Plaintiff must demonstrate that he has satisfied the requirements for the analogous common law claim. *Summerville*, 127 F.3d at 558–59. To state a claim for malicious prosecution under Illinois law, a plaintiff must allege that: "(1) he was subjected to judicial proceedings; (2) for which there was no probable cause; (3) the defendant instituted or continued the proceedings maliciously; (4) the proceedings were terminated in the plaintiff's favor; and (5) there was an injury." *Wilson*, 667 F. Supp. 3d at 871 (quoting *Sneed v. Rybicki*, 146 F.3d 478, 480–81 (7th Cir. 1998)) (cleaned up); *Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). If any element is missing, the claim fails. *See Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 319 (Ill. App. 1st Dist. 2006).

Plaintiff does not sufficiently plead elements two and four. With respect to element two, Defendants urge the Court to defer to the state court's finding of probable cause. [27] at 8–9; [27-1]. The Court will not do so at this time. A "[j]udicial determination of probable cause [is] ordinarily entitled to a presumption of validity," *Washington v. City of Chi.*, 98 F.4th 860, 869 (7th Cir. 2024), but on a motion to dismiss the Court is confined to the four corners of the complaint, which includes no such finding. *Price*, 624 F.3d at 391 n.1; *Hilco, LLC*, 2025 WL 1455825, at *2.

That said, Plaintiff argues that the state prosecution was dismissed ahead of the suppression hearing due to a lack of probable cause. [29] at 5–6. This conclusory allegation does not satisfy Plaintiff's burden. *Lax*, 20 F.4th at 1181. This alone is a sufficient basis to dismiss Counts IV and VII with respect to the City of Chicago.

Plaintiff also fails to allege that the state prosecution was terminated in his favor under element four. Plaintiff argues that his case was terminated in his favor because it was terminated via a *nolle prosequi*, "impliedly conceding" the lack of probable cause. [29] at 6. *Nolle prosequi* is ordinarily considered a favorable termination unless the abandonment is for reasons not indicative of the accused's innocence, *Washington*, 127 F.3d at 558, such as "an agreement or compromise" with the state, "misconduct on the part of the accused" in order to prevent trial, or "the impossibility or impracticability of bringing the accused to trial." *McWilliams v. City of Chi.*, 451 F. Supp. 3d 867, 880 (N.D. Ill. 2020) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1243 (Ill. 1996)). "Otherwise, every time criminal charges were nol-prossed a civil litigation malicious prosecution action could result." *Swick*, 662 N.E.2d at 1243.

Plaintiff pleads no concrete reason for the *nolle prosequi* other than the conclusory statement that it was an "implicit concession" that the state lacked probable cause to prosecute. [1] ¶ 25; [29] at 5–6. He does not plead that it was entered for reasons consistent with his innocence. *See* [1]. Without providing a concrete reason beyond mere speculation as to why the *nolle prosequi* was entered, Plaintiff's malicious prosecution claim fails.

Counts IV and VII are dismissed with respect to the Defendant Officers and with respect to the City of Chicago without prejudice.

### E. Monell Claims

Plaintiff's *Monell* claims against the City of Chicago miss the mark. "[A] plaintiff may demonstrate the existence of municipal policy or custom in one of three ways: (1) proof of an express policy causing loss, (2) a widespread practice constituting custom or usage that caused the loss, or (3) causation of the loss by a person with final policymaking authority." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty., Ind.*, 183 F.3d 734, 737 (7th Cir. 1999) (citing *McTigue v. City of Chi.*, 60 F.3d 381, 382 (7th Cir. 1995)). Plaintiff does not allege any facts that would support a *Monell* claim under either the first or third categories. Instead, he attempts to rely on the second category concerning a widespread practice constituting a custom or usage. To adequately allege a *Monell* claim, Montgomery must "'plead factual content that allows the Court to draw the reasonable inference' that the City maintained a policy, custom, or practice" that contributed to the alleged violation. *McCauley v. City of Chi.*, 671 F.3d 611, 618 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Montgomery has not done so. He alleges that the City of Chicago violated his Fourth and Fourteenth Amendment rights by engaging in an "official policy, custom, or practice," including "the failure to adequately train officers on the requirements for reasonable suspicion and probable cause . . . a pattern of conducting warrantless searches based on fabricated observations; and deliberate indifference to the constitutional rights of

individuals in high-crime areas." [1] ¶ 26.[6] These scant allegations, limited to a single paragraph, are conclusory. *White v. City of Chi.*, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014) (dismissing *Monell* claim against the City of Chicago because the plaintiff "merely alleged that the City engaged in a 'widespread practice' without providing any factual basis for that allegation"); *Falk v. Perez*, 973 F.Supp.2d 850, 864 (N.D. Ill. 2013) (dismissing *Monell* claim because "[t]he single incident that Plaintiff successfully alleges is not sufficient to satisfy the requirements to plead a *Monell* claim under *Twombly* and *Iqbal*").

Again relying on his response brief to amend his Complaint, Montgomery attempts to retroactively support his policy or practice claim using a 2017 Department of Justice investigation report and the 2024 Chicago Police Department litigation report. [27] at 6. These materials span well beyond the allegations in the Complaint, and Plaintiff does not list any specific facts from these materials or connect them to facts supporting his claim. *Carmona v. Chi.*, 2018 WL 1468995, at *4 (N.D. Ill. Mar. 26, 2018) (plaintiff's broad citation to a 160-page Department of Justice report, "without any discussion of the specific findings of the report or any allegations connecting the report findings to the misconduct alleged, is insufficient to support

---

[6] Plaintiff also includes language in each of the federal counts that "[the unconstitutional conduct [by defendant officers] was undertaken pursuant to CPD's policy, custom, or practice of [engaging in the unconstitutional conduct]." [1] at 30, 34, 38, and 42. These conclusory allegations add nothing to the bolster Plaintiff's *Monell* claim against the City.

*Monell* claim"). Plaintiff's *Monell* claims against the City are dismissed without prejudice.[7]

### F. Injunctive Relief

The Complaint seeks injunctive relief prohibiting the City of Chicago from "continuing its unconstitutional policies and practices." *See* [1]. Defendants argue that Plaintiff is not entitled to injunctive relief because he lacks standing. [27] at 13–14. Plaintiff does not attempt to counter this argument in his opposition brief, [29], and therefore abandons this claim. *White v. Ill. State Police*, 482 F. Supp. 3d 752, 770 (N.D. Ill. 2020) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim.") (quoting *Jones v. Connors*, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012)). Plaintiff's requests for injunctive relief are dismissed with prejudice.

## IV. Conclusion

For the stated reasons, Defendants' Motion to Dismiss [27] is granted in part and denied in part. Count I, IV, VII and the unlawful seizure aspect of Count V are dismissed without prejudice. Plaintiff's *Monell* claims are dismissed with prejudice with respect to the Officer Defendants, and without prejudice with respect to the City of Chicago. Finally, Plaintiff's request for injunctive relief is dismissed with prejudice.

---

[7] It is not clear whether Plaintiff alleges *Monell* claims against the Officer Defendants. *See* [30] at 11. Plaintiff does not attempt to defend such claims in his response brief. In any event, such claims are not available for claims against individuals, *Monell v. Dep't of Soc. Serves.*, 436 U.S. 658, 694 (1978). Any *Monell* claims against the Officer Defendants are dismissed with prejudice.

Plaintiff has stated a claim with respect to Counts II, III, VI, absent the *Monell* allegations in those counts, and the unlawful search aspect of Count V. Answer due August 31, 2026. Status report due August 31, 2026 [34].

E N T E R:

Dated: August 18, 2026

MARY M. ROWLAND
United States District Judge